The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated. Mr. Estrada, when you're ready. Thank you, Your Honor, and may it please the Court. Two years ago, this Court reversed a summary judgment that had been entered in favor of Von Drehle in a published opinion that carefully rejected each of Von Drehle's legal theories of why he was not engaged in infringing conduct. There was a jury trial as a result of this Court's ruling, and we're here today because the District Court has once again entered judgment in favor of Von Drehle, this time by setting aside the jury verdict in our favor. We think that the judgment should again be reversed because the District Court relied on preclusion defenses that it itself had repeatedly and correctly rejected as waived before submitting the case to the jury. In changing his mind, the judge did not repudiate any of his earlier factual findings and simply reached a different conclusion after the jury came back. Now, let me deal with our first problem with this, which is the question of waiver. The Myers ruling, which ostensibly gives rise to the preclusion claim in this case, came down on July 23rd, 2009, well before this Court heard the case for the first time. It was weeks before the District Court ruled in Von Drehle's favor. Von Drehle knew of the ruling immediately. When was Von Drehle obligated to raise his preclusion defense in your view? Well, I think promptly, but I think the guide as to the reasonableness of the conduct of Judge Keenan is best provided by the conduct of its own counsel. It may be that there are counsel who are not aware of a District Court ruling elsewhere, but the District Court in this case, at JA 570, found as a fact that both Mr. Thomas and Mr. Allen had been present at the Myers trial and therefore knew immediately of the verdict. I will refer the Court to the 4U case, which was also pending when the Myers ruling came down. Mr. Allen is one of the counsel in 4U. In 4U, it took him eleven days to file an amended answer claiming preclusion based on Myers and also attaching a copy of the Myers ruling. Is it your view, sir, that the time within which to have raised the preclusion issue in the District Court was a reasonable time because there is no time specified? Well, I think a reasonable time to— Is that your view as to the test? Yes. And reasonableness would be judged in perspective of what was happening at the time according to your papers? That is right. What was happening at the time? Well, you know, the case had been progressing slowly for years, but I think that the relevance of the reasonableness inquiry really bears on whether counsel for Vondrell really thought it had a newly available dispositive defense because part of what has happened at the time was that they had already changed their answer three times. And therefore, as everyone knows who has obtained an amendment of an answer multiple times, those are not available in perpetuity. And if you have a newly available legal defense, even if the case on the docket is currently quiescent, you have to make sure that you give notice to your opponent of your intent to assert that defense because after all, you know, the point of the answer is to sharpen the issues that will be tried either in a summary matter by summary judgment or before of a jury. After the notice of appeal had been filed in the Court of Appeals on August the 21st in 2009, could Vondrell have filed something in the district court seeking leave to amend its defense? Well, the district court, given that judgment had been entered, would have lacked jurisdiction at the time, but the case had not yet been briefed in this court. And one of the peculiarities of Vondrell's position in this case, Your Honor, is that they seem to think that it is reasonable to enter judgment for them as a matter of law today after a jury trial, but it would have been unavailable to them to bring the defense as an alternative argument for affirmance before this court when they came on a ruling on the merits. This court has ruled that under the Greenhouse case, for example, that Judge Gregory authored, that you may affirm on any basis that is supported by the record. Their claim today is that this new defense is a legal defense that doesn't need anything. But do you think they could have raised the preclusion defense in front of this court for the first time as a basis for affirmance when it had not raised it in the trial court? No, I think they could have . . . to the extent that their current position on the merits is that it is a legally available claim, it would have been as available to raise in front of the Court of Appeals as an alternative basis for affirmance. We then would have had a discussion as to whether they were tardy and whether that was an available defense at this time given that they had promptly filed elsewhere. But in that event, this court would have had the opportunity to decide whether to write a narrow fact-bound decision based on claim preclusion or send it back on that basis. Couldn't they have asked the district court to have reconsidered and then told the appellate court of the pendency of a new development while the appeal was pending, asked for a stay, and then gone back to the district court? Yes, they could have done that. In fact, in the very old . . . maybe I shouldn't say this because I'm going to show my age. In the very old criminal practice, when you had this issue with criminal appeals under Rule 33 on the criminal side, you used to have a process before the rules were changed, whereas if the district court was thinking of granting a motion for a new trial but the appeal had been taken, the district judge was to alert the Court of Appeals that it was contemplating this motion so that the Court of Appeals could send the case back. There is no question that a party who was diligent about the advancing of a new dispositive defense would have done it promptly here. And indeed, we have compelling evidence that the very same counsel took seven business days, 11 calendar days, to raise the identical preclusion defense based on Myers in 4U. You can go to the 4U docket in the Northern District of Ohio, docket entry 10. It took practically no time for the same counsel who had been present at trial to raise it in 4U. The inference is that the client in this case, Von Drehl, had a business interest in the adjudication of the dispute on the merits because these two people are competitors. They benefit, they thought, from a ruling if they could win on the trademark so that they could extend this to other issues in which they may have similar disputes. That is perfectly appropriate. Defenses are waivable. What is not appropriate is for somebody to play the odds and seek to get a ruling on the merits, lose that gamble, and then take out a defense that they had been holding in their back pocket to then say, we're entitled to a new adjudication. And what the district court found when this first came up was two things that are really important. He found that counsel had been present at Demeyer's case and knew of the defense immediately and that they waited sixteen months to assert it after they lost in the fourth circle, that they had prejudiced their opponent and that they had no valid reason for raising it so tartly. None of that has changed. None of those facts were taken back by the district judge when the district judge, after the jury had adjudicated the factual dispute, came back. Excuse me. Yes, sir. The sixteen months wasn't after they had lost in the fourth circuit, was it? The fourth circuit decided on the 10th of August of 2010. The mandate issued on the 16th of September, and on the 19th of November, Vondrel filed the motion to amend seeking to add the preclusion defenses. Isn't that what happened after the fourth circuit? So it's really three months after the fourth circuit. Well, it is three months after the fourth circuit had ruled, but the court thought that the relevant time, given a party's duty not to rest on its rights, was the date when the defenses supposedly arose, and that was on July 23rd, 2009, when they got the Myers ruling. I will say that the district court did not take back the conclusions as to the length of the delay or the lack of excuse for the delay. He said, after the jury had come back rejecting Vondrel's claims on their facts, he said there was a new reason to consider the preclusive effect of Myers, and that was the decision of the court in 4U to grant preclusive effect in Myers. Did he address the decision of the court in Superior at the time that he addressed the decision of the court in 4U? I don't believe so. The fact is, the ostensible ground from departing from what was for him, you know, the law of the case that this defense is tardy, was that there had been a different litigant represented by the same counsel who had asserted the same defense on a timely basis. But the essence of waiver is some litigants rest on their rights and are waived, and others do not. And the fact that a person who has asserted his rights has been successful in the assertion of their rights is not a reason to ignore the waiver by a party who has waived. Your position is that 4U didn't really give them an advantage that was greater than Myers. That's right, and in fact, that is evident from the discussion by Judge Boyle of the preclusion issue in his last order. Every aspect of the decision is based on Myers. Only the excusing aspect of his ruling is based on 4U, but it is a non sequitur, it's a legal matter to assert that the timely assertion by a different litigant of his rights excuses an already adjudicated waiver on the part of somebody who rested on his rights. And there is a separate issue that has to do with the timeliness that informs not only the waiver, but also the merits of the preclusion questions if we get to them. Because the essence of collateral estoppel is to avoid the waste of resources. Right, and I understand your point. You're saying that he let the trial go ahead after turning them down the first time. Right, and far more cogently for our confidence in the verdict, you can get this out of the Restatement of Judgment, Section 29, Comment F. The D.C. Circuit followed this in the Jack Fawcett case, where you have a second factual adjudication by a different fact finding, which is inconsistent, which is their claim. We actually think that they're consistent, but assuming for the sake of argument that they're inconsistent, the lack of consistency is itself a reason not to grant preclusive effect to the first adjudication. That's what the Restatement of Judgment says. It's your view that that section, that comment means that the jury verdict in this case could be the inconsistency that animates that principle? I accept for purposes of the argument that it could be because their argument loses on its own merits if the judgments are not inconsistent. And so they're either perfectly consistent, in which case there is no ground for having one trump the other, and take away our jury verdict. Or if they are inconsistent, which is the essence of the argument, then there is a basis in the Jack Fawcett case from the D.C. Circuit and the Restatement of Judgment itself to believe that a full adjudication of the merits by a jury of the citizenry who's been summoned to pass on the factual dispute is as entitled to deference as the earlier bench trial. And in those circumstances, the law of the Restatement of Judgment is one judgment is no more entitled to preclusion necessarily than the other. Excuse me, but what is the new evidence that you referred to in the letter you sent in January? You said there's a lot of new evidence that came in at the district court, in this case, that wasn't available or provided to the district court in the Myers case. What are you talking about? If I could respond. One of the issues in trademark infringement, and this is discussed in the South Dakota bank suitcase, which is also cited in our letter, is that as a rule of law, trademark cases have to invoke preclusion very gingerly. That's what the law is. Because as the time passes and the brand equity develops, the holder of the trademark develops a greater interest and the likelihood of confusion may increase. And what happened here is two things. That has happened here, and there was some testimony of that to the trial, but to the extent that there was not additional testimony in that trial, that is itself a byproduct of the failure to raise preclusion promptly. Because if preclusion were raised promptly and the question were has the brand equity developed, and that question were squarely put as a fact question, it could have been adjudicated, and we have tons of evidence as to how we have extended this technology to soap dispensers and to cattle houses where you can hose them off and retain the sanitary conditions, and that there is a lot of investment that bears on the question of confusion and that also bears on the separate question that is at issue here, which is under the Bouchat case, the 2010 ruling from your court, it is at least perfectly clear that the one thing that cannot be barred is injunctive relief on the basis of the conduct that postdated Myers, even if you assume that they were similar enough to be preclusive. Given that this is a ruling as between competitors, that is an essential part of the litigation and that is something that quite clearly under the Bouchat 4 case from 2010 cannot possibly be barred. Let me say one final point because you're being very kind with my time and I don't want to abuse . . . I was about to say you responded to Judge Payne's question. Unless there's a question from the court and you want to eat into your rebuttal time? No, I think I'll wait. Thank you, Judge Gregory. All right. Thank you. All right. Mr. Thomas? May it please the court. If your honors will, I'll jump in just exactly with the discussion you were having with Mr. Estrada. It's clear that Georgia Pacific's principle argument is that somehow in the three-week period between the Myers judgment and Judge Boyle's prior summary judgment in this case, we waived preclusion not only as it applies to Myers but also as it might apply to any other judgment. That proposition is simply not supported in the record in addition to the fact that Georgia Pacific waived it by not raising it in the district court. Why would they be required to raise it? Your honor, the appellant is required to have raised . . . That's exactly the argument they're making against us here, that they're required to have raised arguments in the district court. Otherwise, they are waived. No, but the preclusion was your argument. Your honor, I apologize. They waived any argument that we had waived preclusion. They didn't make a waiver argument in front of the district court. You're saying that they're required to do that? Yes, I am, Your Honor. They're required to make a waiver argument if they want to preserve it for appeal. This case is really curious. As you know, I've been in on it from the beginning in the Fourth Circuit. Correct, Your Honor. It really is troubling to me that we had the situation where the district court . . . We gave a mandate to the district court saying that the likelihood of confusion in the end users was a jury question. That was part of our mandate. That was part of what was fairly understood as the clear directive of this court. The district court ignored it. I mean, what basis was there for the district court simply ignoring the mandate of this court to have a triable issue of fact on the likelihood of confusion? Your Honor, I don't believe that the district court did ignore this court's mandate. The triable issue of fact that this court found in its prior opinion was precisely the issue which was tried in the Myers case. But the law of the Fourth Circuit is different from the law of the Eighth Circuit. They have a different standard for likelihood of confusion. They don't follow all of the factors that the Fourth Circuit handles. I mean, you're aware of that, aren't you? That the Eighth Circuit only has six factors. We have different factors. So how could that preclude the likelihood of confusion case from proceeding forward in this court when the law of the two circuits is not the same? Your Honor, the slight difference is in the factors for preclusion that have been enumerated between the circuits. Well, not a slight difference. Quality is not one of their factors, is it? I don't believe that it is. I don't believe it is. And that's huge. That was the issue. That was the primary issue here when we were here three years ago, or almost three years ago. It was the quality. The Vondrell tiles allegedly were of inferior quality. And since that element is not even part of the Eighth Circuit's likelihood of confusion analysis, how in the world could it be preclusive? First of all, Your Honor, Georgia-Pacific's evidence about the quality of tiles was presented and considered by the trial court in Myers. Second of all, Your Honor, Georgia-Pacific presented the same argument that this court's mandate or this court's opinion in the prior summary judgment necessitated a different conclusion to the Eighth Circuit in its appeal of the Myers case, and the Eighth Circuit rejected that proposition. Well, wouldn't that best be judged by what this court says about it rather than what the Eighth Circuit said about it? Well, Your Honor, I think that the Eighth Circuit's decision on that point is at a minimum very persuasive authority on the point, and I think it's in fact binding on Georgia-Pacific as a party to that prior case. How would it be binding when you're talking about distributors in the Myers case and the 4U case? And you're talking about the manufacturer, a nationwide manufacturer in the Von Drell case, the Georgia-Pacific Von Drell case. How can that be the same case? Your Honor, the same exact issue was litigated in all these cases, the issue of whether a likelihood of confusion is created when Von Drell's towels are dispensed from the in-motion dispensers. Under different legal standards. The differences between the legal standards are not enough to change the ultimate issue in the case. Well, isn't intent a critically different component? And in the Arkansas case, you weren't even looking at the – the court wasn't looking at Von Drell's intent, it was looking at Myers' intent. And the Fourth Circuit's opinion in the prior case is you've got to take a look at the intent when you're making the judgment about which relevant public it is that is confused about what? Your Honor, Georgia-Pacific presented the exact same argument that intent created a difference in the issues to the Sixth Circuit, and the Sixth Circuit roundly rejected it. Not only finding that intent was not relevant – that any alleged differences in intent were not relevant given the particular facts of this case, but also finding that there was no evidence of intent between 4U in that case and Myers' supply when presented. And the evidence that Georgia-Pacific purported to have concerning 4U's intent in that case is exactly the same as what Georgia-Pacific presents to this court as its allegations of intent on behalf of Von Drell. Given the difference in the legal standards, doesn't the restatement second of judgment's counsel that it's a good idea to let this matter go on and get decided because of the different legal standards and the way that they need to be assessed by a finder of fact? No, Your Honor. The difference is – there is no difference in the legal standard. The issue is whether or not a likelihood of confusion is created. And there is a different standard in the circuits on that. The factors are enumerated differently, Your Honor, but – But there are different factors. Show me where quality of the goods is a factor in either the Sixth Circuit test or the Eighth Circuit test. I don't believe it is, Your Honor, but that difference does not change the ultimate issue. And there's no difference in the quality of goods between the cases. The quality of the goods is the same. It's the same goods. If you're only assessing functionality, it's different than when you're assessing quality. It may be the same in functionality, but not the same in quality. Your Honor, my point was that the goods are the same in all of the cases. So there's no difference in the quality of the goods. And all the courts certainly considered the quality of goods in reaching their conclusions, whether or not it's a specific factor enumerated. So if the factors were absolutely diametrically different, it wouldn't make any difference, you said, because the products are the same. No, Your Honor. I can certainly conceive that there would be differences in factors of a test that would change the ultimate issue. But the ultimate issue is the same, which is whether trademark infringement occurs when Vondrell's towels are dispensed from the in-motion dispensers. That was the issue that was tried in the Myers case, and that was the issue for decision both before this court and the 4U court. Well, let's roll things back to March 21, 2011. The district court held that you'd waived any preclusion defense, as you recall. And the district court said Vondrell has unduly delayed in attempting to amend its answer. These amendments would prejudice Georgia-Pacific. Okay? That was March 21, 2011. What changed since then? Well, Your Honor, first of all, I do not believe that the district court held in that March 21 order that we had waived preclusion. Second of all— No, it said unduly delayed in amending its answer and denied your motion. They did deny our motion. Vondrell cannot now be rewarded after it wasted the time and the money of GP and the justice system. That's what the court said on March 21, 2011. So what happened after that? One very significant thing happened, Your Honor, which is that the 4U decision issued. 4U did nothing but follow Myers. 4U is a separate judgment of a district court that has— Superior happened, too, in the interim. So if anything, it was, you know, one court agreed with Myers, one court disagreed with Myers. That's not good enough. What else happened that changed things, changed the landscape to justify the 180-degree reversal in the court's opinion that Vondrell cannot be rewarded after it wasted the time and money of the justice system? The only significant development between the time when that March 21 decision came down and when we made our motion to supplement was the 4U decision. The other significant event that occurred before Judge Boyle made his decision to permit us under Rule 15 to supplement our pleadings to add preclusion. It seemed like the only difference was the delay got longer and the prejudice was higher. Well, first of all, Your Honor, I don't believe that any delay after March 21 could conceivably be allocated to Vondrell. Putting aside arguments about what happened between July of 2009 and this court's mandate— I meant the effect of the delay, earlier delay, got longer. It did get longer, but that was a result of the district court's decision to defer consideration. The district court obviously, I contend, has discretion to defer consideration of motions like this until after trial. I think district courts do that all the time for a host of reasons, both practical and legal. Do you really, when you've been told by the Court of Appeals that you'd better get the case to trial? I'm sorry, Your Honor, I'm not sure. Do you really have that discretion at this juncture? The district court had discretion to defer consideration of the Rule 15 motion and the merits of preclusion until after trial. That was my point. Could I ask you whether there was any reason that Vondrell could not have joined the Myers case? He surely knew about it. I mean, you're a district attorney. My guess is that they called upon you to provide them a defense. At least they informed you of it. Is there any reason you couldn't have joined that case? I can't think of any legal bar to seeking to intervene in that case. Your Honor, given the pendency of this case, I don't know that any litigant would seek to make themselves a defendant in more than one lawsuit. I do know, Your Honor, that Myers Supply saw to stay of that case in favor of this one. GP opposed that. Do you think that GP could have made Vondrell a defendant in the Myers case? I don't believe they could, given the pendency of a prior action against Vondrell. They would have been splitting their claim, just as we contend they were splitting their claim by suing Myers. They had the right to do that, to sue different levels in the distribution chain, but they're bound by the result. Why wouldn't you have argued preclusion in this court when we were here in May of 2010? You had the opportunity to argue preclusion as a basis for affirmance and did not. Your Honor, we did not believe that we did have the opportunity to argue . . . Why? Because we had not had a reasonable opportunity to raise it in the district court and include it in the record on appeal. But 28J can be used for that. Did you think about that? I couldn't honestly tell you what we thought about at the time. You should have. Rule 28J, that's what it's for. Intervening, changing, or whatever the problems that you didn't raise before, and therefore you tell the court it's here before us now. Well, Your Honor, we certainly took every . . . Given that we understood that we were not entitled to argue the preclusive effects of the Myers judgment, we took every step up to that point to alert this court to the existence of the Myers decision and our opinion that it was highly relevant to the outcome of this case. We briefed it. Mr. Curry, who's here with me, was trial counsel for Myers at the trial of that case, and he was present at this court at oral argument and identified to the court. So I think we took every step to identify to the court the existence of that Myers decision and its significance, short of arguing preclusion, which we did not feel we had the power to do since we had not had a reasonable opportunity to assert it in the district court. Excuse me. I'm sorry. In the plain preclusion as part of the trial court's decision in this case, there is a statement that there is privity between the parties, and I could not find in the record any predicate for that, and I didn't see that the district court explained the basis for the privity between Vondrell and Myers. Is that just someplace in the record that I missed or that isn't in the record in the appendix? Your Honor, I don't know that I could cite specifically the basis for Vondrell being in privity with his distributors is that it has a contractual relationship with them concerning the sale of his towels. Well, that may be contractual privity, but you're aware, aren't you, that the issue of privity in estoppel cases is actually quite a narrow concept confined to about three different components, and I didn't see any discussion of whether that privity was extant in this case. Ordinarily, it would seem to me it's something you have to discuss and explain, and it's a factual matter. You're just taking the view that the mere fact that they have a contractual relationship as a distributor, that that was a sufficient privity for the application of the rules of res judicata. With regard to these products, I wouldn't contend that there was privity between Vondrell and his distributors that would apply to something other than the sale of these products. As an aside, Your Honor, I don't believe Georgia Pacific is contesting that there's privity between Vondrell and his distributors on this appeal. They haven't raised that argument. Turning back, Your Honor, to the question of reasonable conduct by Vondrell, as I stated, there's no basis in the record for Georgia Pacific's contention that by failing to act in that three-week period, Vondrell somehow deliberately bypassed the opportunity to present preclusion defenses forever. There's certainly no basis to tie that to Myers. Georgia Pacific made no argument in opposing to tie that to 4U. Georgia Pacific made no argument in opposing our second motion for supplementation that its claim to procedural bar with regard to Myers had some bearing on the 4U decision. They didn't make that argument below. They argued instead that the substance of preclusion had somehow been decided already, which the district court correctly noted was not the case. Going back to July 3, 2009, when the Myers judgment issued, there was no deadline for action in this case. There was no trial date at that point, and there was no notice from the district court as to whether and when it might next take action in the case. For Georgia Pacific to contend that by failing to make a motion in a three-week period in those circumstances is a knowing and voluntary relinquishment of our right to assert preclusion is not justified. Well, don't you have to judge the delay and the effect of the delay and the waiver issue in perspective of reasonableness, which in turn has to be judged in perspective of what was going on in the trial court, and here what was going on is that in April you all had somehow the judge had, it looks like maybe Sue Esponte decided to reconsider the summary judgments that had previously been decided, and if I read the arguments correctly, it looked like you all seemed to do pretty well in those arguments. That's certainly a factor, Your Honor, but we had no notice of when the court was going to next take action, and as you've noted, months had already passed without action. We did not have a deadline to act. Quite simply, Your Honor, we didn't have enough time to prepare all the motions that we needed to file, in this case, to assert preclusion. The district court beat us to the punch and issued the summary judgment before we could make our motion to supplement to assert preclusion defenses in this case. Do you think the restatement of judgments, second section 29, on issue preclusion is available to us in this case to decide it? I do not know the answer to that question, Your Honor. Given that Georgia Pacific could not establish that it was unreasonable for us to bring that motion forward in that three-week period, and that's the core of their argument, that we had waived it at that point, it's entirely unreasonable to assert that in the week between the judgment and the appeal, when the district court lost jurisdiction, having obtained a judgment entirely in our favor on all the claims against us, that we would seek to reopen that judgment. What about the mandate of this court? I don't think you've really sufficiently answered that. I'm sorry, Your Honor? What about the mandate of this court? Are you asking about Georgia Pacific's mandate rule argument? Yeah, I'm asking about that. I'm asking about the mandate that this court issued, saying, I mean, we clearly directed a jury trial. This court found that there was an issue of fact, and that the trial court needed to consider whether confusion among bathroom customers was relevant to the likelihood of confusion analysis. That was this court's opinion. That was the exact issue which was tried in the Myers case, on which 4U has found Georgia Pacific to be precluded, and on which the district court, in this case, found them to be precluded. Okay, now, in the Superior case, though, there was the opposite result. It's correct that there was an opposite result. So why wasn't that preclusive? I mean, it seems to me the quagmire of saying that these distributorship claims are preclusive of the nationwide likelihood of confusion claim, because you have different results. In the same state of Ohio, you had two different results on the same issue. So how could possibly one of those be preclusive? Well, Your Honor, the Superior result was not a final judgment on the merits. The Superior case was stayed pending a resolution of the 4U appeal. 4U has now been affirmed by the Fourth Circuit, and we anticipate that the trial court in Superior will dismiss that matter with prejudice shortly. Even if that's correct, you say the Myers case actually decided the issue that was remanded. As I read Myers, the turning point on the case was that the court concluded that what was at issue was the difference in perception by the distributors and gave short shrift to the relevant public as the entity whose perceptions ought to be considered. Do you think that they really decided the same issue that was put back to the district court in this case, in the Myers case? Yes, Your Honor. Of significance in that regard are two points. Again, the Eighth Circuit considered that exact argument and rejected it, and found that the Myers trial court, and this is a quote, fully considered the evidence relating to confusion by bathroom consumers. Those are page 775 and 776 of the Eighth Circuit's opinion affirming Myers. So the difference is what happened in this court at summary judgment is that... But if you look at Myers, it didn't. Myers essentially said, look, everybody in the industry doesn't think there's any likelihood of confusion, and it's okay to do this. And there's nothing that I saw in the findings of fact of Myers that taught or permitted the finding that bathroom users had any such understanding as that at all. There was evidence in that record about the end user, i.e. the hotel or the restaurant that bought the paper and the distributor. But when you look at what Myers actually did and found, I'm not quite sure it was as broad as the Eighth Circuit said it was. Your Honor, the Myers trial court did consider that evidence. Georgia Pacific's evidence of bathroom consumers was the survey evidence, and the district court at trial did consider that evidence, and it didn't reject it on a legal theory. It found that the other evidence of industry practice was of greater weight. It made that finding as the finder of fact at trial. It wasn't a nationwide survey, though. No, Your Honor, it was not a nationwide survey. Go ahead. No, that's fine. That answered my question. Thank you. Mr. Thomas, you said that Myers decided the issue that this court, the Fourth Circuit, sent back to the district court. Did you say that? That's correct, Your Honor. Well, then if it did, which you conceded it did, going back to Judge Keenan's question to you, the law of the case was, in terms of mandate rule, is that no, that adds to confusion. That is a tribal issue of fact that a jury should decide. So if that's the case, why was it not clearly the district court judge's ruling on that issue was barred by the mandate rule? The Eighth Circuit, you do know, is as wonderful as that circuit is. Judge Otto, of course, is just wonderful, just a story of judges. But it has no effect in the Fourth Circuit. So this court said it is a tribal issue. So in ruling under Myers really was in contradiction to what this court under the mandate rule told the district court. Tell me why that's not the case. It's not the case, Your Honor, because the results were exactly the same. In the Myers case, the trial court at that level found, at summary judgment, that there was a tribal issue on the same issue that this court remanded for trial. So the issues that were sent for trial in the two cases were identical. And the issue is that after the Myers result, Georgia Pacific was precluded from prevailing on the issue that this court had remanded, having already lost to a trier of fact on that issue. I guess the real question is what authority, once the district court has a mandate to try the case, does it have to apply the doctrine of preclusion? Isn't that your real issue? I mean, that's what you're supposing is a permissible procedure by the argument you're making, i.e. that the results are the same. The real question is when the Fourth Circuit tells you to try the case, let it go to the jury, what freedom does a district court then to say, oh, well, that's precluded by something else? What law? And I didn't see anything in the brief that either one of you wrote about that topic. Well, Your Honor, as a general proposition, certainly the Fourth Circuit's prior mandate could not bar the application of preclusion based on a judgment that occurred after that mandate that wasn't part of what this court considered in the prior appeal, which is exactly what 4U is. But what law says that? Is there a case that says that or a rule that says that? I couldn't cite a case that says that, Your Honor. 4U was nothing but an adoption of Myers. How was 4U any different from Myers? You're just using it to try to extend the time for which you would be allowed to raise the preclusion defense. But tell me how analytically 4U was any different from Myers. 4U is a separate judgment of a different court that has issue and claim preclusive effect of its own and bars GP from proceeding on these claims whether or not Myers had ever happened. Did 4U apply the doctrine of estoppel to get to that conclusion? It did, Your Honor. So it didn't make an independent judgment on those points. It said Myers is the law. You're stuck with it. That's absolutely correct. So how is it different? It made a decision on the issue of whether or not Georgia-Pacific could prevail on the question of trademark infringement. Only because of preclusion. It didn't say you can't prevail because you haven't carried the date. That's certainly correct. It said you can't prevail because you lost down in Arkansas. That is certainly correct, Your Honor. Your Honors, I appreciate your patience with me and letting me go over time. If you have any more questions, I'd be happy to answer them, but I'm almost five minutes beyond. Thank you. Thank you, Your Honors. Mr. Estrada, you have some time remaining. Mr. Estrada, I'm sorry, but I didn't hear the answer to the question, the last one that I asked you. And that is, was there new evidence? And if so, what was it? Between the time of Myers and the time of the trial in this case, you say that there was in the letter you wrote in January. Yes. And I didn't understand. I can't figure out what you're talking about. Well, there was evidence that was available in the record in this case on the question of the inferior quality of the Wondrell towels that was not in the Myers case. And that included, you know, the email from Duke Thomas, Duke Thomas, excuse me, who was the sales rep, which I think was actually referred to in this court's earlier opinion, that admitted the complaints about the quality of the product. There was a deposition by a fellow named Hades, which admitted the complaints about the quality of the product. And, you know, the testing by my client of the towels not being all that absorbent. I think there was also testimony by Silk, which was one of our witnesses, with respect to the expansion of the product lines. I will admit to the court that it is not extensive testimony, but that's part of my point, which is to say, if the question of the difference in the building of the brand equity had been one that had been teed together for the litigation, that is to say, if it is an aspect of our claim that they intend to dispute, that itself would have been something that would have alerted us to the need to introduce additional evidence as to the extension of the brand equity, Your Honor. Is the new national survey that you refer to in your letter at JA Appendix 22832, or is that what you're talking about? The new national survey is a survey by an expert by the name of Ford, Your Honor, and he did not testify, but our expert Segev, who did testify, was permitted by the court to incorporate this new analysis. In the same order in which the court denied their attempt to raise preclusion sixteen months after the defense arose, the court also granted us the ability to update the evidence with the Ford survey, but Ford himself did not testify. Segev did give testimony explaining the methodology and the conclusions that have been reached by Ford. If I could just have a couple of points in answer to some things that Mr. Thomas said. He began by saying that we had now raised the question of waiver in the district court when they raised the preclusion arguments. I will refer the court to the Joint Appendix 514 to 16, which we make those arguments at length, and end with the conclusion that their claim, having waited 17 months, is barred by latches and waiver. And so that's 514.16. On the issue that I believe Vondrell has yet to address, because he has no conclusive or compelling answer, the question of the mandate. This court has very strong cases. Bell, which we cited in our briefs, and in addition the Pileggi case, which we cited in response to their 28-J letter. And you can look at the record, and we cite this in our brief too, that the district court himself recognized that what he was being asked to do was inconsistent with the work that this court had done and the mandate and the law of the case. When the issue was raised yet again by Vondrell as the trial was starting, his folksy answer to them was, what are they going to say in the Fourth Circuit? Can he not read? And so he clearly recognized the inconsistency between what he was being asked to do and the work that the Fourth Circuit had already done in sending him the case back to trial. And it's another aspect of his earlier reasoning that he failed to explain or defend or articulate any reason for the exercise of discretion to reach a flatly contrary conclusion later. On the reasonableness point, they knew full well that there was a new argument, and they had high hopes that they would win on the merits of the trademark claim. That is why they did not come back to the court even to say, there is a new potentially dispositive issue, Your Honor. Give us more time to file a pleading. Don't rule yet. That would have been a perfectly appropriate thing for any litigant to do if you were interested in getting a ruling on the basis of preclusion rather than a ruling on a broader merits question that would be more helpful to their business. And again, I cannot emphasize at this point enough, we can gauge the reasonableness of what counsel who knew these facts would have done by the conduct of counsel in this case. Mr. Allen, who is counsel here and counsel in 4U, took seven business days after the district court ruled in Myers to file an amended answer with a copy of Myers. The inescapable inference is that the choice not to do so in this case was expressly an advertent one. Finally, they did raise Myers in this court, but again, it was perfectly available to them, as does Gregory say, to make every preclusion argument they're making now. After all, they say it's an issue of law that trumps even a jury verdict. They could have brought it to the Fourth Circuit at the time if they were interested in a narrower ruling they were hoping for a home run and only raised this when they failed to get to first base. Thank you, Your Honor. Thank you. Thank you, counsel. We will come down to Greek Council and proceed to our next case.
judges: Diana Gribbon Motz, Roger L. Gregory, Barbara Milano Keenan, Roger L. Gregory, Barbara Milano Ke